**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ROCKY MOUNTAIN HOLDINGS, INC., | : | NO.  08-3381 |
| DIMELING, SCHREIBER & PARK, L.P., | : | |
| DIMELING, SCHREIBER & PARK | : | |
| REORGANIZATION FUND, L.P., and | : | |
| DUPONT CONOCO PRIVATE MARKET | : | |
| GROUP TRUST, | : | |
| | : | |
| Defendants. | : | |


**MEMORANDUM**

BUCKWALTER S. J.                                                                    March 3, 2009

       Currently pending before the Court is the Motion to Dismiss the Amended

Complaint by Defendants Dimeling, Schreiber & Park, L.P., Dimeling, Schreiber & Park

Reorganization Fund, L.P., and DuPont Conoco Private Market Group (collectively "Moving

Defendants"), and the Response of Plaintiff United States of America ("United States").  For the

following reasons, the Motion is denied.

**I.    FACTUAL AND PROCEDURAL HISTORY**

       According to the facts set forth in the Amended Complaint, Rocky Mountain

Holdings, LLC ("Rocky Mountain") entered into a transaction on October 17, 2002, whereby it

was paid $28 million for the sale of its only asset, Rocky Mountain Helicopter, Inc.  (Am.

Compl. ¶ 19.)  The sale closed on October 17, 2002, in Philadelphia, Pennsylvania, and Rocky

Mountain received an immediate $15,210,895 in proceeds from the sale (the "Sale Proceeds"). (Id. ¶¶ 20-21.)  Of that amount, $14,860,895 was immediately transferred to the account of Rocky Mountain's only shareholder, the Dimeling, Schreiber & Park Reorganization Fund, L.P. ("the Fund").  (Id. ¶ 22.)  That same day, the Fund wired 88.9% of the $14,860,895 (or $13,224,710.50) to the State Street Bank and Trust Company as Trustee of DuPont Conoco Private Market Group Trust ("DuPont Conoco"), (id. ¶ 23), and 11.01% (or $1,636,184.50) to account no. 2654-6524, titled to Dimeling, Schreiber & Park, L.P. ("DSP).  (Id. ¶ 24.)  Later that same day, DSP transferred the $1,636,184.50 to DuPont Conoco.  (Id. ¶ 25.).

Rocky Mountain received additional proceeds in the amount of $296,509.45 (the "Additional Sales Proceeds") on November 21, 2002.  (Id. ¶ 26.)  That same day, the Additional Sales Proceeds were transferred to the Fund.  (Id. ¶ 27.)  The Fund then transferred 88.99% of that amount (or $263,862.87) to the State Street Bank and Trust Company as Trustee of DuPont Conoco, (id. ¶ 28), and 11.01% (or $32,645.58) to DSP, account no. 2654-6524.  (Id. ¶ 29.)  DSP then wired its share to DuPont Conoco.  (Id. ¶ 30.)

In total, Rocky Mountain transferred approximately $15,157,403 from the proceeds of the October 17, 2002 sale, all of which ended up in DuPont Conoco's account.  (Id. ¶ 31.)  According to the Amended Complaint, such transfers rendered Rocky Mountain insolvent. (Id. ¶ 32.)  Further, at the time of the above-described transfers, Rocky Mountain, based on its own tax return, was indebted to the United States of America for unpaid federal income tax liability for the year 2002.  (Id. ¶ 33.)  The Amended Complaint alleges that the transfers were made without fair consideration and were made to or for the benefit of insiders of Rocky Mountain.  (Id. ¶¶ 35-36.)

2

On November 10, 2003, a delegate of the Secretary of the Treasury of the United States issued corporate income tax, interest, and penalty assessments against Rocky Mountain for the year 2002, based on Rocky Mountain's own Form 1120 return, in the amount of $1,813,601. (Id. ¶ 11.)  As a result of Rocky Mountain's failure to pay these assessments after due notice and demand, federal tax liens arose as of the date of each assessment in favor of the United States and against all property and rights belonging to Rocky Mountain and the Fund.  (Id. ¶ 12.)  In addition, statutory penalties and interest were assessed against Rocky Mountain.  (Id. ¶ 13.)  To date, Plaintiff has recovered only $15,972.27 from Defendants, leaving an unpaid balance of the assessed tax liability of over three million dollars.  (Id. ¶ 38.)

On July 18, 2008, Plaintiff initiated the current litigation against the various Defendants seeking to (1) reduce its tax assessment against Defendant Rocky Mountain to Judgment (Count I), and (2) set aside the alleged fraudulent conveyances by and among the Fund, DSP, and DuPont Conoco (Count II).  On December 12, 2008, Moving Defendants brought the present Motion to Dismiss the fraudulent conveyance claim.  Plaintiff responded on January 16, 2009, and Moving Defendants filed a Reply Brief on January 30, 2009.  The Court now considers the merits of that motion.

## II.   STANDARD OF REVIEW

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the legal sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).  In the recent decision of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.

1955 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> 127 S. Ct. at 1965.  Following <u>Twombly</u>, the Third Circuit has cautioned that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008).  Additionally, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" <u>Id.</u> (alteration in original) (quoting <u>Twombly</u>, 127 S. Ct. at 1969 n. 8).  Finally, the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" <u>Id.</u> at 234 (quoting <u>Twombly</u>, 127 S. Ct. at 1965).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1965).

Notwithstanding these new dictates from the United Supreme Court and the Third Circuit, the basic tenets of the Rule 12(b)(6) standard of review have remained static.  <u>Spence v. Brownsville Area Sch. Dist.</u>, Civ. A. No. 08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations.  <u>Phillips</u>, 515 F.3d at 231.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings

Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.  DISCUSSION

The sole claim against Moving Defendants challenges alleged fraudulent transfers

pursuant to the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa.C.S. § 5101, *et*

*seq*.[1]  PUFTA is designed "to protect creditors from debtors who might try to shelter assets by

sham transactions, thereby depriving the creditor of his ability to collect from the debtor."  Bell

v. Wyatt, Civ. A. No. 03-3225, 2005 WL 1522015, at *1 (Pa. Com. Pl. 2005), aff'd, 903 A.2d 39

(Pa. Super. 2006).  The language of the statute states:

> **(a) General Rule.** --A transfer made or obligation incurred by a
> debtor is fraudulent as to a creditor, whether the creditor's claim
> arose before or after the transfer was made or the obligation was
> incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay or defraud any creditor of the
> debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or
> obligation, and the debtor:
>
>> (i) was engaged or was about to engage in a business or a transaction for
>> which the remaining assets of the debtor were unreasonably small in
>> relation to the business or transaction; or
>> (ii) intended to incur, or believed or reasonably should have believed that
>> the debtor would incur, debts beyond the debtor's ability to pay as they
>> became due.

---

1.   Notably, the Amended Complaint does not specify the statutory basis of the fraudulent transfer claim.
Originally, the entirety of Moving Defendants' initial motion argued that Plaintiff had failed to state a claim under
the Federal Debt Collections Procedures Act ("FDCPA"), 28 U.S.C. § 3301, *et seq.*  (Moving Defs.' Mem. Supp.
Mot. to Dismiss 7-16.)  In its Opposition Brief, however, Plaintiff clarified that its fraudulent conveyance claim was
premised not on the FDCPA, but rather on PUFTA.  By way of a Reply Brief, Moving Defendants' directly
challenge the adequacy of Plaintiff's claim under PUFTA.

12 PA. CONS. STAT. § 5104(a).  "Once the creditor establishes the existence of a fraudulent transfer or obligation, the creditor may, *inter alia,* avoid the transfer or obligation, attach the transferred assets or other property of the transferee, obtain an injunction barring further transfers, or seek appointment of a receiver over the transferred asset."  K-B Bldg. Co. v. Sheesley Constr., Inc., 833 A.2d 1132, 1135-36 (Pa. Super. 2003) (citing 12 PA. CONS. STAT. § 5107(a)).

Pursuant to its plain language, section 5104 covers two different types of fraudulent transfers.   The first demands a showing of actual intent by the transferee to defraud. In re Total Containment, Inc., 335 B.R. 589, 612 (Bankr. E.D. Pa. 2005). The second presumes constructive fraud where plaintiff has established:  (1) that the transferor did not receive a reasonably equivalent value in exchange for the debt; and (2) that the transferor's assets were unreasonably small to cover a past or imminent business transaction, or that the transferor believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.  12 PA. CONS. STAT. § 5104(a)(2); see also Total Containment, 335 B.R. at 613-14.  Plaintiff's Amended Complaint sets forth both types of transfers and Defendants now move for their dismissal.[2]

### A.    Intentional Fraudulent Transfer

Moving Defendants seek to dismiss Plaintiff's claim of intentional fraudulent transfer on two separate bases.  First, they contend that the Amended Complaint fails to plead "actual intent" with the requisite specificity.  Second, they assert that Plaintiff's failure to allege

---

2.   Moving Defendants also question whether PUFTA is appropriately applied to Plaintiff's claim against the Defendants under Pennsylvania's choice of law rules.  (Moving Defs.' Reply Br. 2.)  As Moving Defendants offer no substantive analysis of this issue, the Court does not address it.

that any of the Defendants was other than a good faith transferee proves fatal to the cause of action.  The Court addresses each argument individually.

### 1.    Failure to Plead "Actual Intent" With the Requisite Specificity

As noted above, under the statute, an intentional fraudulent transfer claim requires a showing that the transfer was made "with actual intent to hinder, delay or defraud any creditor of the debtor."  12 PA. CONS. STAT. 5104(a)(1).  Plaintiff bears the burden of proving the defendant's actual intent to defraud.  In re C.F. Foods, L.P., 280 B.R. 103, 109 (Bankr. E.D. Pa. 2002).  Moving Defendants argue that Plaintiff's cause of action for intentional fraud does not satisfy the applicable requirements, as it fails to plead fraud with specificity.

While the Federal Rules of Civil Procedure generally require only "a short and plain statement of the claim showing that the pleader is entitled to relief," Loftus v. SEPTA, 843 F. Supp. 981, 986 (E.D. Pa. 1999) (citing FED. R. CIV. P. 8(a)(2)), Federal Rule of Civil Procedure 9(b) specifically sets forth the pleading requirements for a claim of fraud, including intentional fraudulent conveyances under section 5104(a)(1).  Bratek v. Beyond Juice, LLC, Civ. A.  No. 04-4491, 2005 WL 3071750, at *6-7 (E.D. Pa. Nov. 14, 2005).  This Rule requires that the plaintiff  "'plead the circumstances constituting the alleged fraudulent conveyances with particularity.'"  Bratek, 2005 WL 3071750, at *6 (quoting River Road Dev. Corp. v. Carlson Corp., Civ. A. No. 89-7037, 1990 WL 69085, at *8 (E.D. Pa. May 23, 1990)).  The particularity required by Rule 9(b) "means the who, what, where, when, and how."  Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997) (quoting DiLeo v. Ernst & Young, 901 F.3d 624, 627 (7th Cir. 1990)).  Nonetheless, the rule is satisfied, despite the absence of specific dates and amounts of the transfers, if the claim "details the transfers alleged to be

fraudulent, the reasons the transfers are fraudulent, and the roles of the defendants in the

transfers." In re El Comandante Mgmt. Co., LLC, 388 B.R. 469, 473 (D.P.R. 2008); see also

River Road, 1990 WL 69085, at *10 (finding it unnecessary for plaintiff in an intentional

fraudulent transfer claim to identify specific dates and amounts of conveyances); Total

Containment, 335 B.R. at 599-600 (holding that nothing in Rule 9(b) requires allegations of

place, date, or time to fulfill the particularity function).

   Notably, this Rule does not mandate that every alleged misrepresentation appear

in the pleadings.  Total Containment, 335 B.R. at 600 (citing 2 MOORE'S FEDERAL PRACTICE ¶

9.03[1][a] at 9-17 (3d ed. 1999)).  As explained by the Third Circuit,

> [Rule] 9(b) requires plaintiffs to plead the circumstances of the
> alleged fraud with particularity to ensure that defendants are placed
> on notice of the "precise misconduct with which they are charged
> and to safeguard defendants against spurious charges" of fraud. . . .
> . The first sentence of Rule 9(b) requires the identification of the
> elements of the fraud claim. . . .  Nonetheless, focusing exclusively
> on the particularity requirement is "too narrow an approach and
> fails to take account of the general simplicity and flexibility
> contemplated by the rules."

Craftmatic Secs. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989) (quotations omitted).  The

requirement of pleading fraud with particularity is further tempered in those circumstances,

"'[w]here it can be shown that the requisite factual information is peculiarly within the

defendant's knowledge or control.'"  Total Containment, 335 B.R. at 600 (quoting Nw. Human

Servs., Inc. v. Panaccio, Civ. A. No. 03-157, 2004 WL 2166293, at *8 (E.D. Pa. Sep. 24, 2004)).

   As an additional caveat to the particularity requirement, the second sentence of

Rule 9(b) expressly provides that "[m]alice, intent, knowledge, and other conditions of a person's

mind may be alleged generally."  FED. R. CIV. P. 9(b).  Accordingly, a plaintiff need not plead

intent with the same particularity required of the circumstances constituting the alleged fraudulent conveyances. River Road, 1990 WL 69085, at *10 (citing FED. R. CIV. P. 9(b)); see also Tricontinental Indus., Ltd. v. PriceWaterhouseCoopers, LLP, 475 F.2d 824, 833 (7th Cir.) (holding that the "heightened pleading standard" does not extend to "states of mind," which "may be pleaded generally" under Rule 9), cert. denied, 128 S. Ct. 357 (2007).

With respect to pleading an intentional fraudulent transfer claim, it is widely recognized that "[because] individuals are rarely willing to admit intent, actual fraud is rarely proven by direct evidence." In re Pa. Gear Corp., Adv. Nos. 03-940, 03-942, 2008 WL 2370169, at *9 (Bankr. E.D. Pa. Apr. 22, 2008) (citations omitted). Accordingly, the existence of fraudulent intent may be inferred from all facts and circumstances surrounding the conveyance. U.S. v. Green, 201 F.3d 251, 256 (3d Cir. 2000). To prove "actual intent" for purposes of a fraudulent conveyance under section 5104, the statute allows for consideration to be given to certain "badges of fraud," including whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 PA. CONS. STAT. § 5104(b).  "Not all badges of fraud need be established to prove fraudulent intent."  Pa Gear Corp., 2008 WL 2370169, at *10 (citing In re Computer Personalities Sys., Inc., 362 B.R. 669, 675 (Bankr. E.D. Pa. 2006)).  Likewise, other factors, beyond the above-enumerated "badges of fraud," can be considered in determining whether a transfer was made with actual intent to defraud.  C.F. Foods, 280 B.R. at 109.  Finally, "PUFTA does not require proof to set aside a transfer that the debtor intended to defraud the *specific* creditor bringing the fraudulent transfer claim."  In re Blatstein, 192 F.3d 88, 97 (3d Cir. 1999) (emphasis in original). Intent to defraud any creditor is sufficient.  Id.

Repeatedly, courts have declined to dismiss a claim of intentional fraud under PUFTA when a plaintiff has adequately set forth with specificity the details of the challenged transfers and generally pled a sufficient number of the badges of fraud.  For example, in In re Total Containment, 335 B.R. 589 (E.D. Pa. 2005), a trustee in bankruptcy sought to set aside several transfers under PUFTA, alleging that they were intentionally fraudulent.  Id. at 598.  The trustee's complaint alleged, albeit in cursory fashion, several of the badges of fraud enumerated in section 5104(b), including that the transfer was concealed from the debtor's creditors, that the

transfer was of substantially all of the creditor's assets, that the debtor was insolvent and increased its insolvency as a result of the transfer, and that the transfers had no legitimate purpose or benefit to the debtor, such as an antecedent debt, and thus were done to mislead creditors.  Id. at 598, 615.  The complaint further alleged that the "conduct of the Defendants . . . was intentional, [and was] engaged in for an improper purpose and with a bad motive."  Id. at 615.  On review of a motion to dismiss this complaint, the court found that even though the Trustee had not expressly cited to 12 Pa.C.S. § 5104 in the complaint, such a statutory reference was not required for notice pleading.  Id.  Ultimately, the court found that "[a]ccepting the trustee's allegations as true for purposes of these motions to dismiss, I conclude that he may be able to prove at trial that the July 2nd transfers from [the debtor] to [the defendants]" were intentional as set forth by the references to various badges of fraud.  Id. at 614.

        Similarly, in Universal Computer Consulting, Inc. v. Pitcairn Enters., Inc., Civ. A. No. 03-2398, 2004 WL 345415 (E.D. Pa. Feb. 23, 2004), the plaintiffs alleged that the defendant engaged in an asset sale in an attempt to "evade and frustrate" plaintiffs' attempt to collect on a final judgment entered against defendant.  Id. at *1.  The defendants filed a motion to dismiss plaintiff's allegations under PUFTA, averring failure to state a claim upon which relief may be granted.  Id. at *3.  In response to the allegations in the complaint setting forth eight of the eleven badges of fraud, defendants argued that plaintiffs had failed to substantiate several of their allegations and that plaintiffs' focus on preferential transfers to insiders was insufficient to establish defendants' intent to hinder, delay, or defraud.  Id. at *7.  The court acknowledged that "[d]efendants' arguments, if proven true, would defeat the merits of [p]laintiffs' claims," but found that "these arguments would be appropriate for summary judgment."  Id.  It thus rejected

11

the motion to dismiss, noting that "[a]t this procedural juncture, where [p]laintiffs' factual allegations and all reasonable inferences therefrom must be accepted as true, we find that [p]laintiffs state a claim pursuant to the Pennsylvania UFTA."[3]  Id.

In the present case, Plaintiff alleges that Defendant Rocky Mountain filed its 2002 corporate tax return in September 2003, reporting an unpaid income tax liability of $1,813,601 for the 2002 tax year.  Despite this foreseeable tax liability, Rocky Mountain sold its only assets on October 17, 2002, and distributed the proceeds received to its sole shareholder, the Fund. (Am. Compl. ¶¶ 22, 27.)  Immediately thereafter, the same funds were transferred, through a series of transactions, first to DSP and ultimately to DuPont Conoco (Id. ¶¶ 25, 28, 30.)  As to each transaction, the Amended Complaint details the date, amount, transferor, and recipient of the transfer.

The Amended Complaint then sets forth intent generally, alleging that the transfers rendered Rocky Mountain insolvent and, at the time of the transfers, Rocky Mountain was indebted to Plaintiff for unpaid federal income tax liability.  (Id. ¶¶ 32-33.)  Moreover, the transfers were made "without the exchange of reasonably equivalent value (without fair consideration)."  (Id. ¶ 33.)  The Amended Complaint further avers that "[s]ome or all of the

---

3.  See also Stenberg v. Woodruff, Civ. A. No. 96-1462, 1996 WL 524329, at *6 (E.D. Pa. Sep. 12, 1996) (finding that a complaint sufficiently asserted a violation of section 5104 by averring that the defendant made an undisclosed transfer of substantially all of his assets to his wife, an insider, for less than the assets' value and became insolvent as a result of the transfer); River Road Dev. Corp. v. Carlson-Corp. Ne., Civ. A. No. 89-7037, 1990 WL 69085, at *10 (E.D. Pa. May 23, 1990) (holding that where plaintiff identified the alleged conveyances with particularity, the accompanying allegations of intent to defraud may be plead generally and based on "information and belief."); In re Southwest Supermarkets, LLC, 325 B.R. 417, 430-31 (Bankr. D. Ariz. 2005) (holding that allegations in complaint that transfers were done "with an evil mind," for less than fair consideration, and rendered defendant insolvent constitute "badges of fraud" that may give rise to an inference of actual intent and were sufficient to state a claim for actual fraudulent transfer under rules of notice pleading); Sullivan v. Kodsi, 373 F. Supp. 2d 302, 306-07 (S.D.N.Y. 2005) (concluding that allegations generally setting forth multiple "badges of fraud" are sufficient to support the requisite "strong inference of fraud" and satisfy F.R.C.P. 9(b)).

12

above-described transfers were made to or for the benefit of insiders of the Rocky Mountain

Holdings, Inc." (Id. ¶ 36.)  Together these allegations, on their face, invoke at least five badges

of fraud:  (1), (5), (8), (9), (10), and (11).  In addition, the Amended Complaint contains a direct

allegation that "[t]he above-described transfers were made with the actual intent to hinder, delay

or defraud the United States of America, a creditor of the Rocky Mountain Holdings, Inc." (Id. ¶

34.)

        In response, Moving Defendants contend that of the few badges of fraud

referenced in the Amended Complaint, Plaintiff has alleged them "in purely conclusory fashion,

with no facts to buttress them in any meaningful way." (Moving Defs.' Reply Br. 6.)  For

example, with respect to Plaintiff's contention that Moving Defendants were insiders of Rocky

Mountain (badge number 1), Moving Defendants assert that the Amended Complaint does not

purport to identify the relationships between or among the parties or demonstrate that either DSP

or DuPont fall into any of the categories of an "insider" under the PUFTA.[4]  Moreover, as to

Plaintiff's assertion that the distributions were made without receipt of reasonably equivalent

value (badge number 8), Moving Defendants claim that "there is not a single allegation about

either the circumstances surrounding the distributions to the Fund (e.g., whether the distributions

constituted contractually required returns on investment) or the value of what was received by

Rocky Mountain in exchange for them (e.g., the funds that were used to acquire the assets

---

4.   The Court notes that the Amended Complaint specifically alleges that the Fund was Rocky Mountain's only
shareholder.  (Am. Compl. ¶ 22.)  By way of its Response Brief, Plaintiff clarifies that DSP and DuPont Conoco held
percentage shares in the Fund.  (Pl.'s Mem. Opp. Mot. to Dismiss 2.)

sold)."[5]  (Moving Defs.' Reply Br. 7.)  With respect to Plaintiff's contention that the transfers rendered Rocky Mountain insolvent (badge number 9), Moving Defendants argue that the facts of the Amended Complaint fail to demonstrate "balance sheet" insolvency as defined by statute since Rocky Mountain had no alleged liabilities at the time of the transfers.[6]  Finally, as to Plaintiff's assertion under badge number 11 that Rocky Mountain transferred the essential assets of the business to a lienor who then transferred them to an insider, Moving Defendants contend that Plaintiff has failed to plead that the Defendants are "insiders" for purposes of PUFTA and have not alleged that the Fund was a lienor.  Notably, Moving Defendants have not challenged Plaintiff's allegation that the transfer was of substantially all of Rocky Mountain's assets.

The sum and substance of Moving Defendants' arguments, however, (1) mistakes the standard for specifically pleading the particulars of fraud with the standard for generally pleading the requisite intent and (2) demands a level of scrutiny more befitting of a motion for summary judgment.  By listing the dates, amounts, actors, and other details of each of the challenged transfers, Plaintiff has set forth the "who, what, where, when, and how" of its fraud

---

5.   The Court rejects this argument since whether a transferee gave value for the transfer is again a question of fact and not amenable to review on a motion to dismiss.  In re Burry, 309 B.R. 130, 137 (Bankr. E.D. Pa. Feb. 3, 2004); see also In re Asousa P'ship, Adv. No. 04-1012, 2006 WL 1997426, at *12 (Bankr. E.D. Pa. 2006) ("[w]hether reasonably equivalent value was exchanged is an inherently factual issue to be determined on a case-by-case basis.") (citations omitted).

6.   Moving Defendants also contend that the statute's presumption of insolvency § 5102(b) is not applicable because there was no showing that Rocky Mountain was "generally" not paying its debts as they became due.  Solvency or insolvency, however, turns on multiple questions of fact, which are not properly resolved in a motion to dismiss.  See generally Protocomm Corp. v. Novell, Inc., 171 F. Supp. 2d 459, 467 (E.D. Pa. 2001) (recognizing genuine issue of material fact as to solvency or insolvency of transferor precluded summary judgment as to fraudulent transfer claim).

Notably, Moving Defendants also miscite Leopold v. Tuttle, 549 A.2d 151 (Pa. Super. 1988) for the proposition that vague conclusions of the transferor's indebtedness are insufficient to survive a motion to dismiss. In Leopold, the court was referring not to allegations regarding a transferor's insolvency, but rather to the statutory element of a transferor's indebtedness to a creditor.  Id. at 153-54.

14

claim, thereby satisfying the particularity requirement of Rule 9.  In addition, consistent with the

second sentence of Rule 9(b), Plaintiff has generally averred intent by setting forth at least six

badges of fraud.  Although the allegations lack significant detail, it is well established that "[t]he

purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim."

Universal Computer Consulting, 2004 WL 345415, at *4 (citing Morganroth v. Morganroth v.

Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 n.2 (3d Cir. 2003)).[7]  For purposes of a

motion to dismiss, this Court is required to accept all of Plaintiff's well-pled allegations as true.

Doing so, the Court finds that Plaintiff has sufficiently pled fraud with particularity and intent

---

7.   Moving Defendants cite a series of cases in support of the proposition that "numerous federal and state courts have dismissed claims of fraudulent transfer under PUFTA and analogous statutes where, as here, they merely track the statutory language without pleading facts to support such allegations."  (Defs.' Reply Br. 8.)  The Court finds none of these cases convincing.  For example, in Leopold v. Tuttle, 549 A.2d 151, 154 (Pa. Super. 1988), the court dismissed a fraudulent conveyance claim, finding that the plaintiff had made no allegation in her pleading that defendant was indebted to any present or future creditor at the time of the conveyance – a key statutory requirement. Id. at 154.  By contrast, Plaintiff, in this case,  has specifically alleged that Defendant Rocky Mountain had tax liability, which was incurred by the end of the 2002 calendar year and became due by April 15, 2003, approximately six months after transfers at issue.  (Am. Compl ¶ 18.)
        In Graduate Cardiology Consultants, P.C. v. Vivra, Inc., Civ. A. No. 00-2827, 2000 WL 33711050 (Pa. Com. Pl. Oct. 20, 2000), the complaint alleged simply that some defendants transferred assets to other defendants "with the intent of hindering, delaying and/or defrauding [plaintiff] as a creditor, and to put assets beyond [plaintiff's] reach.  Id. at *5.  The court dismissed the claim and granted plaintiff leave to amend to plead fraudulent conveyance with specificity, finding that the allegations failed to put defendants on notice of the challenged conveyances.  Id. at *7.  The Amended Complaint in this case, however, alleges all the details of the challenged transfers and then sets forth, albeit generally, multiple badges of fraud to support the allegation of intent.
        Defendant's citation of Seidel v. Byron, Civ. A. No. 05-6698, 2008 WL 4411541, at *6 (N.D. Ill. Sep. 26, 2008) and In re Circle Y of Yoakum, 354 B.R. 349 (Bankr. D. Del. 2006) is similarly unavailing.  In Seidel, the court dismiss a fraudulent transfer allegation where the complaint alleged only that "[w]ithin four years prior to the filing of the Bankruptcy Case, the Defendants participated in the transfer of the interests of [Mosaic] in property to other entities or the incurring of obligations with actual intent to hinder, delay, or defraud [Mosaic's] creditors." Id. at *5.  The court noted that this complaint did not satisfy Rule 9(b) since it failed to set forth the who, what, or where of the challenged transfers and failed to suggest any of the indicators of actual intent.  Id.  Similarly, in Yoakum, the defendants simply recited the statutory elements of fraud without factual details regarding the alleged fraudulent transfers.  The court dismissed the fraud claims and granted leave to amend.  354 B.R. at 356.  Again, by contrast, the case before this Court describes the challenged transfers in great detail and alleges various indicators of actual intent.
        Finally, neither U.S. v. Billheimer, 197 F. Supp. 2d 1051 (S.D. Ohio 2002) nor In re Lepelly, 233 B.R. 802, 810 (Bankr. N.D. Ohio 1999) is instructive as these cases were decided during summary judgment proceedings.

generally, such that it can obtain relief on its claims.  Accordingly, we reject this portion of Defendants' Motion to Dismiss.[8]

### 2.        Whether Moving Defendants Were Good Faith Transferees

_____In an alternative challenge to Plaintiff's intentional fraudulent transfer claim, Moving Defendants contend that the Plaintiff's claim fails under 12 Pa.C.S. § 5108, which exempts certain transfers as not fraudulent, including those made to a "a person who took good faith and for a reasonable equivalent value" or "any subsequent transferee or obligee."  12 PA. CONS. STAT. § 5108(a).  Moving Defendants argue that Plaintiff has not alleged in its Amended Complaint that any of the Defendants was anything other than a good faith transferee.

Defendant's argument, however, misunderstands the burden of pleading "good faith" transferee under 12 Pa.C.S. § 5108(a).  This provision offers an affirmative defense to a defendant faced with a claim of either intentional or constructive fraudulent transfer under section 5104.  In re Burry, 309 B.R. 130, 134-35 (Bankr. E.D. Pa. 2004).  It requires proof of two elements – (1) innocence on the part of the transferee and (2) an exchange of value – which, when raised successfully, defeats both types of fraudulent transfer claims.  Id. at 135.  As this is an affirmative defense, however, the defendants "bear the burden of proof."  Id. (citing In re Foxmeyer Corp., 286 B.R. 546, 572 (Bankr. D. Del. 2002).

Given this jurisprudence, the burden falls on Moving Defendants in this case to establish both their innocence, as well as an exchange of value.  Plaintiff has no equivalent

---

8.   Even if the Court were to find that the Amended Complaint failed sufficiently plead a fraudulent transfer claim, the appropriate remedy would be to grant leave to amend in lieu of dismissal.  Total Containment, 335 B.R. at 601. "[U]nless the facts alleged in the complaint clearly show that the plaintiff has no legitimate claim, courts ordinarily will allow the plaintiff leave to amend the complaint."  Id. (quoting 2 MOORE'S FEDERAL PRACTICE, § 12.34[5] at 12-76.1 (3d ed. 1999)).  Only where a repleading cannot correct the complaint's defects should leave to replead be denied and the motion to dismiss be granted.  Id.

burden to plead that Moving Defendants were not good faith transferees.  As the validity of this defense turns on factual questions outside the pleadings,[9] the Court declines to grant the Motion to Dismiss on this ground.

**B.**    **Whether the Amended Complaint States a Claim for Constructive Fraudulent Transfer**

Plaintiff's Amended Complaint also sets forth a claim for constructive fraudulent transfer under 12 Pa.C.S. § 5104(a)(2).  In its coordinate challenge to this claim, Moving Defendants assert that the Amended Complaint fails to include the requisite allegations that the transfers at issue were made:  (1) outside the ordinary course; (2) without receipt of reasonably equivalent value; and (3) when Defendant Rocky Mountain should have believed it would incur debts it could not pay.

To set aside a transfer under section 5104(a)(2), one does not have to prove that the debtor intended to defraud the specific creditor bringing the fraudulent transfer claim.  Tiab Commc'ns Corp. v. Keymarket of Napa, Inc., 263 F. Supp. 2d 925, 934 & n.4 (M.D. Pa. 2003).  Rather, this section allows for the "assumption of fraudulent intent when the debtor makes a transfer or incurs an obligation without receiving a reasonably equivalent exchange, and the debtor is or is likely to become insolvent."  Bratek v. Beyond Juice, LLC, Civ. A. No. 04-449, 2005 WL 3071750, at *6 (E.D. Pa. Nov. 14, 2005).  More specifically, the elements of a constructive fraud cause of action under PUFTA consist of:  (1) "proof that the transferee

---

9.    Moving Defendants argue that Plaintiff concedes that the distributions from DSP to DuPont Conoco were made in satisfaction of a loan, which is sufficient under section 5103(a) to establish reasonably equivalent value.  (Moving Defs.' Reply Br. 10.)  As Moving Defendants themselves note, however, section 5108 is concerned only with whether the first transferee – in this case the Fund – was a good faith transferee.  See 12 PA. CONS. STAT. § 5108(a).  The Amended Complaint makes no such concession that the transfer to the Fund was for reasonably equivalent value.

received less than reasonably equivalent value for the exchange at issue," and (2) "proof that the transferee (A) was insolvent on the date of the transfer or became insolvent thereby; (B) was engaged, or was about to engage, in a business or transaction for which its remaining assets represented unreasonably small capital; or (C) intended to incur, or believed that it would incur, debts that would be beyond the transferee's ability to pay as they matured." In re Xyan.Com, Inc., 299 B.R. 357, 363 (Bankr. E.D. Pa. 2003). Since fraud does not have to be proven, the pleading requirements of Rule 9(b) are no longer applicable. Bratek, 2005 WL 3071750, at *6.

Moving Defendants first argue that the Amended Complaint contains no allegations about the circumstances surrounding the transfers or anything to indicate that they were outside of the ordinary course or made without receipt of reasonably equivalent value. (Moving Defs.' Reply Br. 11.) Moreover, they aver that the Amended Complaint pleads no facts to show that the monies paid were disproportionate relative to the amount that the Fund invested in Rocky Mountain or in excess of the amount needed to satisfy the antecedent debt. (Id.)

This argument finds no legal basis.[10] The Amended Complaint states that the transfers at issue "were made without the exchange of reasonably equivalent value (without fair consideration)." (Am. Compl. ¶ 35.) Such allegations are sufficient at the pleading stage to give notice of a claim for constructive fraudulent transfer. Indeed, the Third Circuit has expressly found the burden of proving reasonably equivalent value falls on defendants. In re Blatstein, 192 F.3d 88, 98 (3d Cir. 1999). The Court declines to demand that Plaintiff allege and prove the lack

---

10.   As noted previously, Defendant asserts that Plaintiff appears to concede that the transfers were made pursuant to a partnership agreement and/or in repayment of a loan. (Id.) The Court can find no such concession. Rather, Plaintiff's Memorandum in Opposition acknowledges only that "*Transferee Defendants state* that [DSP] used the Sale Proceeds to pay a loan with DuPont." (Pl.'s Mem. Opp. Mot. to Dismiss 10.)

of value, particularly when the existence or non-existence of value is information uniquely within Defendants' possession.

Moving Defendants' second challenge to the constructive fraud claim is equally unavailing. They contend that Plaintiff has failed to plead facts to show that Rocky Mountain was engaged or about to engage in a transaction for which its assets were unreasonably small or that Rocky Mountain intended to incur or should have believed it would incur debts it could not pay. (Moving Defs.' Reply Br. 12.) According to Moving Defendants, Rocky Mountain had no remaining business once it sold Rocky Mountain Helicopter, Inc., "nor is there any allegation (much less evidence) that Rocky Mountain believed at the time of the distributions that it would incur a large tax liability in connection with the sale." (Id.)

This contention again misunderstands the standard of review at the motion to dismiss stage. The Amended Complaint explicitly alleges that Defendant Rocky Mountain "based on its own tax return, was indebted to plaintiff United States of America for unpaid federal income tax liability for the year 2002." (Am. Compl. ¶ 33.) That tax return was filed on September 18, 2003, (id. ¶ 18), but Moving Defendants concede that Rocky Mountain's tax liability for 2002 was determined as of March 15, 2003. (Moving Defs.' Mem. Supp. Mot. to Dismiss 12 n.12.) The transfers at issue occurred a mere five months earlier and "rendered Rocky Mountain Holdings, Inc. insolvent" and unable to pay the tax liability.[11] (Am. Compl. ¶¶ 32, 38.) Indeed, Moving Defendants concede that Rocky Mountain ultimately dissolved in 2003. (Moving Defs.' Mem. Supp. Mot. to Dismiss 2.) Taking all reasonable inferences from the

---

11.   The Amended Complaint alleges that Rocky Mountain sold its sole asset and received $15,210,895 in proceeds. (Am. Compl. ¶¶ 21, 26.) Of that amount, it transferred a total of $15,157,403, leaving approximately $53,492. (Am. Compl. ¶ 31; Moving Defs.' Mem. Supp. Mot. Dismiss 11-12.)

Amended Complaint in the light most favorable to Plaintiff, the Court must accept as true that Moving Defendants could have reasonably anticipated a tax liability resulting from the sale of its assets that exceeded the amount of money it retained after the all of the challenged transfers, leaving it unable to pay a debt it knew it was going to incur.  The issue of whether or not Defendant actually believed that no taxes would be payable on the sale proceeds, as alleged in the Motion to Dismiss, is a question of fact having no relevancy to our current analysis.  (Id. at 4 n.5.)  The Court therefore declines to dismiss the constructive fraudulent transfer claim.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court finds that the Amended Complaint sufficiently states a claim, within the standards required by the Federal Rules of Civil Procedure, for both actual and constructive fraudulent transfer.  As Moving Defendants have been put on notice of the precise misconduct with which they are charged, there is no basis for granting the Motion to Dismiss.

An order follows.

20